UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF THE COMPLAINT                    C.A. NO.: 18-CV-457-JWD-SDJ
OF THE DREDGE BIG BEAR, its engines
Tackle, appurtenances, etc., and its owner(s)
and operator(s), in a Cause for Limitation
or Exoneration from Liability

### RULING ON LA CARRIERS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIMITATION OF LIABILITY

This matter comes before the Court on a Motion for Partial Summary Judgment on Limitation of Liability ("Motion") filed by defendant LA Carriers, LLC ("Defendant" or "LAC"). (Doc. 36.) It is opposed by claimant Eugene Jackson ("Claimant" or "Jackson"). (Doc. 41.) LAC filed a reply memorandum. (Doc. 44.) The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reason, the Motion is denied.

I.     **Factual and Procedural Background**

At all times pertinent hereto, the M/V TREY PAUL ("Trey Paul"), a 65 foot, 150 gross ton push boat,[1] was owned and operated by LAC.[2] LAC was also the employer of Kevin McCreary ("McCreary"), a boat captain since 1983 with 15 years of experience with LAC.[3] On the date of the accident, January 22, 2017, McCreary was at the helm of the Trey Paul traveling southbound on the Mississippi River north of Baton Rouge.[4] It was pushing a tow of six loaded barges.[5] The Trey Paul rounded the bend at Wilkerson Point approaching the US 190 Bridge.[6] As it did so, it "made a passing arrangement with a northbound vessel in which the vessels would

---

[1] Doc. 41-4 (U.S. Coast Guard Report of Marine Casualty).
[2] Doc. 29 at 5.
[3] LAC Statement of Uncontested Material Fact ("SUMF") 12, Doc. 36-2 at 2. This fact was admitted by Plaintiff. (Doc. 41-1 at 2.) Unless otherwise indicated, when the Court refers to a SUMF, it has been admitted by Plaintiff.
[4] SUMF 1.
[5] Doc. 41-3 at 11.
[6] SUMF 3.

1

pass port to port and the M/V TREY PAUL would pass [under] the US 190 Bridge through the center span."[7]

As he approached the center span of the bridge, McCreary "felt the head of the tow being sucked toward the bank and a dredging vessel,"[8] the dredge BIG BEAR ("Big Bear"). He then tried to counter steer, using all three of the vessel's propellors,[9] but "the strength of the eddy became too much for the [Trey Paul] to overcome, and none of the evasive maneuvers he attempted succeeded."[10] In order to avoid impact with the Big Bear, McCreary attempted to "twin screw" and "top around"[11] but he was unsuccessful and the Trey Paul allided with Big Bear.

Plaintiff claims that "[w]hen the lead tow…struck the [Big Bear], Eugene Jackson was in the pilot's chair of the dredge, facing the opposite direction of the approaching hazard, performing his duties as the captain of the dredging vessel.[12] *** The force of the impact of the collision caused Eugene Jackson to fall to the cockpit floor…thereby sustaining the injuries claimed in the litigation."[13]

The parties disagree about the force of the allision. LAC claims that "[h]aving greatly reduced his speed,… the M/V TREY PAUL made a minimal impact with the dredge BIG BEAR."[14] Jackson denies the impact was minimal, responding that the Trey Paul weighed "approximately 150 gross tons and its tow was estimated to be anywhere between 4,600 and 9,000 gross tons."[15]

---

[7] *Id*.
[8] SUMF 4.
[9] Doc. 41-3 at 14.
[10] SUMF 5.
[11] SUMF 6.
[12] Doc 41 at 2, citing Doc. 41-2 at p. 72.
[13] *Id*. at 2-3, citing Doc. 41-6 at p. 168.
[14] Doc. 36-2 at 2, citing Doc. 36-3 at p. 16.
[15] Doc. 41-1 at 1, citing Doc. 41-4, Doc. 41-5, and Doc. 41-7 pp. 26-27.

The present Limitation of Liability action was brought on April 18, 2018 by the owners, operators and owners *pro hac vice* of the Dredge Big Bear, Moore House Investments, LLC, Wyandotte Dredging, Inc., and Bear Industries, Inc. ("Petitioners").[16] Jackson and LAC filed Answers and Claims in the Limitation proceeding.[17] Jackson filed a third party complaint against LAC.[18] LAC also filed a counterclaim against Petitioners.[19] In its Answer to Jackson's third party demand against it, LAC asserted limitation of liability as a defense.[20]

## II.     Arguments of the Parties

LAC argues, in short, that any negligence on its part arose from "an isolated navigational error"[21] of its captain and "not any managerial decision or other act within the privity or knowledge of [LAC]."[22] In support of its contention, LAC argues that McCreary was a skilled and experienced mariner who had been a captain since 1983 and employed by LAC for 15 years.[23] He had not been "involved in any prior incidents, had no actions taken against his license, and had proven his proficiency on this vessel and on the Mississippi River."[24]

The Trey Paul was "fit for duty in all respects,"[25] was not underpowered and all of its engines, generators and navigational equipment were working properly.[26] "Pushing six barges was well within the [Trey Paul's] capabilities."[27] According to LAC, the experts for both parties "discuss only a navigational decision by Capt. McCreary as a potential cause of the accident."[28]

---

[16] Doc. 1.
[17] Docs. 5 and 9 respectively.
[18] Doc. 5 at 7-9.
[19] Doc. 9 at 5-7.
[20] Doc. 24 at 2-3.
[21] Doc. 36-1 at 1.
[22] Doc. 36 at 1.
[23] Doc. 36-1 at 2.
[24] *Id*. at 3.
[25] *Id*.
[26] *Id*. at 3-4.
[27] *Id*.
[28] *Id*. at 4.

LAC cites to several cases which purportedly support its position that mere navigational errors or other negligence of the master or crew do not fall within the privity or knowledge of the vessel owner.[29] In sum, "[t]here is no evidence supporting any managerial or equipment failure. Instead, any fault on the part of Capt. McCreary can be defined as navigational error outside the privity or knowledge of [LAC]."[30]

Jackson responds that LAC failed to timely request limitation.[31] Further, he asserts that LAC's Rule 30(b)(6) representative, safety compliance and security officer Nessie Pierce, as well as McCreary himself, were aware that eddy currents were present "on most every point downriver" on the Mississippi River,[32] and there had been a previous mishap involving a LAC vessel which had lost control in an eddy.[33]

Jackson argues that LAC had "privity or knowledge" so as to defeat its entitlement to limitation because, despite Pierce's admitted knowledge of river eddies and their propensity to "suck vessels in,"[34] it never provided training to McCreary on "how to successfully navigate an eddy or maneuver a boat caught in an eddy"[35] nor did its safety manual address this issue.[36] It failed to implement a policy or procedure to address this known hazard[37] and did not send a notice of the safety hazard at Wilkerson Point to McCreary although it regularly sends out such notices to its captains.[38]

---

[29] *Id*. at 8-12.
[30] *Id*. at 6.
[31] Doc. 41 at 8-9.
[32] Doc. 41 at 4, quoting Doc. 41-3 at p. 21; *see also id*. at 3-4, 9-10.
[33] *Id*. at 3.
[34] *Id*. at 9.
[35] *Id*. at 4.
[36] *Id*. at 4, 9.
[37] *Id*. at 9.
[38] *Id*. at 4.

4

According to Jackson, McCreary admitted that the Trey Paul "was underpowered at the time it tried to navigate Wilkerson Point on the day of the accident."[39] Jackson points the Court to LAC's safety manual which states that the proper horsepower-to-tow ratio is a decision reserved for "LA Carriers, LLC Management/Port Captain."[40] He argues that given the weight of the tow, LAC or, alternatively, McCreary, to whom LAC had vested managerial authority to make the decision regarding the safe horsepower-to-tow ratio, knew or should have known the vessel was underpowered for the foreseeable eddy which the Trey Paul encountered.[41]

Jackson maintains that McCreary's knowledge at or prior to the commencement of the voyage is "deemed conclusively [to be] the privity or knowledge of the owner of [the] vessel."[42] Finally, Jackson urges that the cases relied upon by LAC are distinguishable and therefore do not support LAC's position.[43]

In its reply memorandum, LAC maintains its defense of limitation was asserted timely.[44] It argues that Jackson's invocation of the Limitation Act's imputation clause is legally incorrect since that clause is limited to seagoing vessels (which the Trey Paul is not) and excepts "tugs, towboats, [and] towing vessels" (which the Trey Paul is).[45]

LAC insists that Jackson is wrong as a factual matter when he alleges that LAC did not implement policies, procedures or guidance regarding how a captain should deal with eddies and quotes provisions of its Safety Manual which it claims address this issue.[46] It disputes the

---

[39] *Id*. at 5, citing Doc. 41-3 at 67; see also *id*. at 12.
[40] *Id*. at 11-12, quoting Doc. 41-8, Section 2.1.
[41] *Id*. at 12-13.
[42] Doc. 41 at 7, *quoting Henry v. Candy Fleet Corp.*, No. 98-1747 c/w 98-2196, at *1 2001 WL 121913 (E.D. La. Feb. 12, 2001.)
[43] *Id*. at 14-18.
[44] Doc. 44 at 1-2, *citing Signal Oil and Gas Co. v. Barge W-701*, 654 F.2d 1164, 1173 (5th Cir. 1981); *El Paso Prod. GOM, Inc. v. Smith*, 406 F. Supp. 2d 671, 676 (E.D. La. 2005).
[45] *Id*. at 2, citing 46 U.S.C.A. 30506(e) and (a).
[46] *Id*. at 4, quoting and citing Doc. 41-8 and Doc. 44-2 at 47-50.

relevance of the other incident involving loss of control in an eddy since this incident came after the event sued on and was factually different.[47]

Jackson's allegation that the Trey Paul was underpowered, argues LAC, is conclusory and not supported by fact or law.[48] Finally, LAC returns to its main argument, that mere navigational error, which this was, supports LAC's entitlement to limitation of liability.[49]

### III.    Standard – Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .   [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' "[50] The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence."[51] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' "[52]  Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.[53]

---

[47] *Id.* at 5.
[48] *Id.* at 6-7.
[49] *Id.* at 7-8.
[50] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted).
[51] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted).
[52] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.
[53] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Because this case will be tried to the bench, the usual summary judgment standard is altered somewhat.

> Further, the Court notes that this case will be tried to the bench. The Fifth Circuit "has determined that a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial."[54] "[W]here 'the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions.' "[55] To that end, the Fifth Circuit has upheld "the grant of a summary judgment motion requiring the district court to make a factual determination 'in light of all the circumstances surrounding a given transaction.' "[56] "Although, as always, a district court must be aware that assessments of credibility come into sharper focus once live witnesses are heard," the Fifth Circuit has found "that even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result."[57]

*Tsuhlares v. Adriatic Marine, LLC*, No. 6:16-CV-00742, 2018 WL 3673303, at *2 (W.D. La. Aug. 2, 2018) (deGravelles, J).

### IV. Standard – Limitation of Liability

In considering LAC's Motion for Summary Judgment, it is important to consider some of the special rules that apply in limitation of liability proceedings.

"The Limitation of Liability Act generally limits a vessel owner's liability to the value of the vessel, post casualty, plus any pending freight. The limit is removed, however, if the negligence or unseaworthiness that caused the damage was within the 'privity or knowledge' of the owner."[58] " 'Privity or knowledge' extends beyond actual knowledge to the knowledge that the shipowners could have obtained by a reasonable investigation at the inception of the

---

[54] *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991).
[55] *Id.* at 398 (*quoting Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ).
[56] *Id.* (*quoting Houston North Hosp. Properties v. Telco Leasing, Inc.*, 680 F.2d 19, 22 (5th Cir. 1982) ).
[57] *Id.* (*citing Nunez*, 572 F.2d at 1123-24).
[58] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 21 F. Supp. 3d 657, 752–53 (E.D. La. 2014) (internal citations omitted).

7

voyage."[59] One noted maritime scholar wrote: "There is an unmistakable trend in the judicial decisions to interpret the 'privity or knowledge' requirement of the Limitation Act to impose a heavy burden on shipowners and operators to exercise a high degree of control and supervision so as to avoid marine casualties."[60]

> In the typical case, claimants bear the initial burden of proving that their injuries arose as a result of the owner's negligence or the vessel's unseaworthiness. Once this burden is met, the burden shifts to the owner to prove a lack of "privity or knowledge" of a negligent act or unseaworthy condition.[61]

Especially for purposes of considering a motion for summary judgment, it is important to emphasize that "the question of whether [a vessel owner] lacked privity or knowledge, and thus may limit its liability, is fact-specific…"[62] "The question of 'privity or knowledge' must turn on the facts of the individual case.' "[63]

### V.    Discussion

#### A.  Did LAC assert its limitation defense timely?

> A shipowner can assert its right to limitation of liability in one of two ways. First, the shipowner can claim limitation by pleading it as a defense in an answer to a claim in any court. ***Alternatively, the shipowner can file a limitation of liability proceeding in federal district court under section 185 of the Limitation of Liability Act.[64]

In this case, the limitation action was brought by Petitioners, not LAC. Rather, LAC asserted its limitation defense in its answer to Jackson's third-party claim. When as here, a

---

[59] *SCF Waxler Marine LLC v. M/V ARIS T*, 427 F. Supp. 3d 728, 774 (E.D. La. 2019) (internal citations omitted); *see also Trico Marine Assets Inc. v. Diamond B. Marine Servs., Inc.*, 332 F.3d 779, 789-90 (5th Cir. 2003) ("Knowledge, when the shipowner is a corporation, is judged not only by what the corporation's managing officers actually knew, but also by what they should have known with respect to conditions or actions likely to cause the loss."); *In re Oil Spill by Oil Rig Deepwater Horizon*, *supra* at 753.
[60] Thomas J. Schoenbaum, Admiralty and Maritime Law, §15:8, Sixth Edition (2018).
[61] *In re Oil Spill by Oil Rig Deepwater Horizon, supra* at 753 (citing *In re Signal, Int'l*, 579 F.3d 478, 486 (5th Cir. 2009)).
[62] *In re Omega Protein, Inc.*, 548 F.3d 361, 372 (5th Cir. 2008).
[63] *ADM Int'l SARL v. River Ventures, LLC,* 441 F. Supp. 3d at 381 (internal citations omitted).
[64] *El Paso Prod. GOM, Inc. v. Smith*, 406 F. Supp. 2d 671, 675 (E.D. La. 2005) (internal citations omitted).

shipowner claims the right to limit by way of defense, the six-month limitation does not apply. "Limitation may be invoked by way of a defense to a particular claim at any time."[65] Hence, the Court rejects Jackson's argument and finds that LAC has timely asserted its limitation defense.

### B. Does 46 U.S.C.A. 30506 allow the Court to impute Captain McCreary's knowledge to LAC?

Jackson contends that McCreary's knowledge at or prior to the commencement of the voyage must be "deemed conclusively [to be] the privity or knowledge of the owner of [the] vessel."[66] Hence, argues Jackson, McCreary's knowledge of the strong current eddies on the Mississippi River and specifically the eddy at Wilkerson Point, must be directly imputed to LAC.[67]

LAC counters that Jackson's reliance on the so-called "imputation clause" is misplaced since its application is limited by section (a) of the statute, which reads:

> (a) Application.--*This section applies only to seagoing vessels, but does not apply to* pleasure yachts, *tugs, towboats, towing vessels*, tank vessels, fishing vessels, fish tender vessels, canal boats, scows, car floats, barges, lighters, or nondescript vessels.[68]

Since the Trey Paul is a "towing vessel that operates on the inland rivers" and "not a 'seagoing vessel,'" the imputation clause, insists LAC, is not applicable.

The Court has reviewed the records and concludes that the Trey Paul is an inland tugboat. Jackson's expert, Capt. Gregg W. Nichols, describes it as such.[69] LAC's expert, Earl Bruce

---

[65] *Id*. at 676. *See also Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1173 (5th Cir. 1981); *Sana v. Hawaiian Cruises, Ltd.,* 181 F.3d 1041, 1047 (9th Cir. 1999) (finding the Act's six month limitation does not apply when limitation is asserted as a defense.); *Complaint of Bayview Charter Boats, Inc.,* 692 F. Supp. 1480, 1483 (E.D.N.Y. 1988) ("When limitation is pleaded in an answer as a defense, the six-month time limit imposed by Section 185 does not apply and the district court may conduct a concursus even after the running of the period." (*citing Deep Sea Tankers*, 258 F.2d at 772–73; *The Chickie,* 141 F.2d 80, 84–85 (3d Cir. 1944).)
[66] Doc. 41 at 10-11.
[67] *Id*.at 11, citing 46 U.S.C. § 183(e). This provision is now codified as 46 U.S.C.A. § 30506(e).
[68] 46 U.S.C.A. § 30506(a).
[69] Doc. 36-5 at 3, 5.

9

Darst, agrees and calls it an "1800 hp towing vessel."[70] The Coast Guard report made a part of the record calls the Trey Paul a "push boat" and an "inland vessel."[71] There is no countervailing evidence to suggest it was a seagoing vessel. Thus, the imputation clause is unavailable to aid Jackson on the issue of privity or knowledge.

### C. Is there a material question of fact regarding LAC's alleged failure to implement policies, procedures or guidance regarding eddies so as to make limitation of liability unavailable on summary judgment?

Jackson argues that LAC failed to implement a policy or procedure to address this known hazard of strong eddies[72] nor did its safety manual address this issue.[73] Specifically, Jackson states that LAC "failed to adopt appropriate policies, procedures or provide any guidance whatsoever to its captains on what measures so they can [sic] successfully navigate eddy currents."[74] LAC disagrees and points the Court to specific parts of its safety manual that it argues cover this issue.[75]

Privity and knowledge exist where a vessel owner negligently fails to provide adequate policies and procedures when such failure was a proximate cause of the loss.[76] The Court has carefully reviewed the cited portions of the safety manual and while it is true that these alert employees to the presence and dangers of high waters, currents, wave actions and the like, there is no provision which directly addresses the issue of what measures can be taken to allow the vessel to navigate and escape the eddy currents. Neither side disputes that McCreary was unable to extricate himself from the eddy and avoid the collision. Thus, there is a question of fact

---

[70] Doc. 36-6 at 3.
[71] Doc. 41-4 at 1.
[72] Doc. 41 at 4, 9, citing Doc. 41-7 and Doc. 41-8.
[73] *Id*.
[74] *Id.* at 10-11.
[75] Doc. 44 at 4, quoting Doc. 44-2 at 14-15 and citing Doc. 44-2 at 47-50.
[76] *Trico Marine Assets Inc.*, 332 F.3d at 790 (affirming district court's refusal to limit vessel owner's liability for, *inter alia*, failing to have "adequate policies or procedures to guide" the captain).

whether the safety manual negligently failed to address this issue and LAC's privity and knowledge of same. This issue of material fact makes summary judgment inappropriate.

> **D. Is there an issue of material fact regarding LAC's alleged failure to train McCreary about the dangers of eddies and how to navigate safely through them?**

Jackson submits that despite LAC's safety director's admitted knowledge of river eddies and their propensity to "suck vessels in,"[77] and McCreary's knowledge of eddies on the Mississippi River and at Wilkerson Point,[78] LAC never provided training to McCreary on "how to successfully navigate an eddy or maneuver a boat caught in an eddy."[79] LAC replies that McCreary felt that he had all the expertise he needed to traverse this span of the river, given the position of the dredge and eddy.[80] Privity and knowledge exist where a vessel owner fails to provide training needed to operate the vessel safely in known or foreseeable conditions.[81]

The two bits of testimony cited by Jackson and LAC to support their respective and conflicting positions are ambiguous, at best. The issue is whether McCreary was trained by LAC to navigate through or out of an eddy. Jackson's counsel asked that question directly.

> Q. Has LA Carriers ever provided you with any kind of training on how to navigate eddies or navigate once you've encountered an eddy; your tow is in an eddy?
>
> A. Yeah. Eyes. Radar.[82]

---

[77] Doc. 41 at 9, citing Doc. 41-7 at 9.
[78] *Id*. at 4, citing Doc. 41-7 at 26, 72.
[79] *Id*., citing Doc. 41-7 at 55-56.
[80] Doc. 44 at 5, citing Doc. 36-3 at 26.
[81] *Trico Marine Assets Inc.*, 332 F.3d at 790 ("In short, the facts found in this case go far beyond mere navigational errors. Diamond B knew, or should have known, that the MISS BERNICE was unseaworthy and that its captain was improperly trained.") *See also*, *In re Oil Spill by Oil Rig Deepwater Horizon,* 21 F. Supp. 3d at 753 ("To the extent this failure was negligence, Transocean was aware that its crews lacked training about the proper use of diverters, and therefore this negligence was within Transocean's privity and knowledge.")
[82] Doc. 41-3 at 55-57.

This answer could be read as a sarcastic way of answering in the negative or it could be read as an affirmative reply. If the latter, it is certainly unclear how training in "eyes" and "radar" would assist a captain in navigating out of an eddy. No question was asked to clarify the answer.

LAC's lawyer asked a less direct question.

Q. All right. And do you feel you had all the training and expertise necessary to traverse this span of this river, given the position of the dredge, the eddy, et cetera?

A. Yes.[83]

This could be read to ask whether McCreary was trained to "traverse this span of the river" without being pulled into the eddy. Or it could include whether he was trained on how to safely exit an eddy if he inadvertently got drawn into it. Further, how McCreary "feels" about the training he received is hardly the issue. Again, the answer is unclear, and no follow up question was asked.

On a motion for summary judgment, all inferences must be drawn in favor of the nonmovant.[84] Given the fact that eddies are a common and potentially dangerous condition on the Mississippi River, a fact well known to both McCreary and LAC safety director Pierce, the failure to train McCreary on how to extricate his vessel once drawn into an eddy could, if true, be a proximate cause of the allision in this case. It is the plaintiff-in-limitation who has the burden to prove it had no privity or knowledge of the unseaworthy conditions or negligent acts.[85] Because there is an issue of material fact on this point, LAC has failed to meet its burden and LAC's motion for summary judgment must therefore be denied.

---

[83] Doc. 36-3 at 71.
[84] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d at 1263.
[85] *ADM Int'l SARL v. River Ventures, LLC*, 441 F. Supp. 3d at 380 (*citing Trico Marine Assets Inc. v. Diamond B Marine Services Inc.*, 332 F.3d 779, 789 (5th Cir. 2003)).

> **E. Is there a question of material fact regarding whether the M/V TREY PAUL was underpowered at the time of the event so as to make limitation of liability unavailable on summary judgment?**

An unseaworthy condition about which the owner should have known is privity and knowledge that precludes limitation of liability.[86] "In *Brister* [*v. A.W.I., Inc.,* 946 F.2d 350, 356 (5th Cir. 1991)], we surveyed Supreme Court and circuit court cases, and noted that knowledge of an unseaworthy or negligent condition is normally imputed to a corporate owner if the 'condition could have been discovered through the exercise of reasonable diligence.' *Id*. at 356."[87]

Jackson argues that the Trey Paul was underpowered for the eddy into which it was drawn and from which McCreary could not escape before the collision, thus rendering the vessel unseaworthy.[88] He maintains that LAC's safety manual gives the responsibility for insuring that its vessels have an adequate horsepower-to-tow ratio to LAC's Management/Port Captain.[89] Jackson points the Court to McCreary's deposition testimony where McCreary arguably admitted that the Trey Paul was underpowered.[90]

LAC responds that any possible fault on its part was mere navigational error by McCreary about which it didn't know and could not have known.[91] It also notes that Plaintiff's expert does not criticize the Trey Paul for being underpowered but does blame McCreary's decision to pass the oncoming vessel port to port instead of starboard to starboard, a navigation

---

[86] *Trico Marine Assets Inc. v. Diamond B Marine Servs. Inc*., 332 F.3d at 790 (affirming refusal to limit liability because vessel owner "knew, or should have known, that the MISS BERNICE was unseaworthy and that its captain was improperly trained"). *See also Pennzoil Producing Co. v. Offshore Exp., Inc*., 943 F.2d 1465, 1473-74 (5th Cir. 1991).
[87] *In re Omega Protein, Inc*., 548 F.3d at 371.
[88] Doc. 41 at 5, citing Doc. 41-3 at 67; *see also id*. at 12.
[89] *Id*. at 11-12, quoting Doc. 41-8, Section 2.1.
[90] Doc. 41 at 5, citing Doc. 41-3 at 67; *see also id*. at 12.
[91] Doc. 36 at 1; Doc. 36-1 at 1.

error.[92] LAC argues that Jackson mischaracterizes McCreary's testimony and that the Court should not credit his conclusory assumption regarding being underpowered.[93]

In *In re Omega Protein, Inc.*, the Fifth Circuit provided the following guidance in distinguishing between unseaworthiness and errors in navigation in the context of entitlement to limitation of liability.

> Seaworthiness is "reasonable fitness to perform or do the work at hand." *Id*. When unseaworthiness exists due to equipment that is defective at the start of a voyage, and the defects can be discovered through the exercise of reasonable diligence, limitation of liability is less likely to be available—but not necessarily precluded. See *Brister*, 946 F.2d at 357 & n. 5. In contrast, "[e]rrors in navigation or other negligence by master or crew are not attributable to (the vessel owner) for limitation purposes." *Mac Towing*, 670 F.2d at 548 (quotation omitted). Ultimately, regardless of whether a mistake of navigation or unseaworthiness caused the allision, the question of whether Omega lacked privity or knowledge, and thus may limit its liability, is fact-specific and subject to reversal only if clearly erroneous. See *Trico Marine Assets*, 332 F.3d at 789.[94]

An underpowered vessel is unseaworthy for purposes of limitation's privity and knowledge issue.[95] McCreary's testimony can certainly be read to suggest that he attributed the Trey Paul's failure to escape the eddy to the vessel's insufficient engine power.

> Q. Okay. My next question is: If the Trey Paul was not underpowered, then why didn't it do what you were asking it to do?
>
> A. I believe the river was stronger at that point.
>
> Q. So you had actually – in other words, the vessel wasn't strong enough to handle the river where you were taking it. Right?
>
> Mr. Parenton: Objection. Argumentative.
>
> A. At that specific point in the river, I suppose.
>
> Q. Because of the upbound eddy.

---

[92] Doc. 36-1 at 1.
[93] Doc. 44 at 6-7.
[94] *In re Omega Protein, Inc.,* 548 F.3d at 372.
[95] *ADM Int'l SARL v. River Ventures, LLC,* 441 F. Supp. 3d at 381 ("At the very least, River Ventures knew, or should have known, that the Freedom was underpowered and unable to readily maneuver in the strong current…Therefore River Ventures is not entitled to a limitation of its liability…as requested.")

> A. That's my assumption.
>
> Q. Yeah. And it was safe to assume that there might be an eddy there. Right? Around that point?
>
> A. I explained there was an eddy around every point. So…[96]

Because there is a question of material fact whether the Trey Paul was unseaworthy at the commencement of the voyage and whether LAC knew or should have known that this was the case, i.e. had privity and knowledge of same, the motion for summary judgment must be denied.

## VI. Conclusion

Even "where 'the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions.' "[97] Here, there are evidentiary facts which are in dispute and a trial would clearly enhance this Court's ability to draw the correct inferences and conclusions. Accordingly, and for the foregoing reasons, LAC's Motion for Summary Judgment (Doc. 36) is denied.

Signed in Baton Rouge, Louisiana, on <u>March 15, 2021</u>.

 

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[96] Doc. 41-3 at 67.
[97] *Matter of Placid Oil Co.*, 932 F.2d at 398 (5th Cir. 1991) (*quoting Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).